Good morning, your honors. Good morning. And I've asked to reserve five minutes for rebuttal. Is this good enough for the mic? I think it's fine. May it please the court, Kevin Keeney appearing on behalf of defendant David Hallberg. Your honors, to reverse this case in its entirety, you need look no further than the supplemental excerpt of the record at page 44, where Judge King says, Turner had no reason to think she had been tortiously injured until she learned that Hallberg had purchased her house, thus disclosing his intent. And when did she learn that? She learned that in April of 2002, was when she was present when Mr. Hallberg was at the house, and he was interested in buying it. That was after February. Well, how was she supposed to know that? Why would the mere presence of him on the street alert her? That's the incident that you're referring to, right? Correct. So she's being evicted. That's within the two years. She sees somebody down the street who she may or may not recognize as Mr. Turner. I'm sorry, Mr. Hallberg, yeah. Now, how is she supposed to know at that point that she's been, that she's, that a tort has been committed against her? Because by that point, she knows that he has, everything, all these facts have already occurred. He's appeared for his first inspection where there's the incident in the driveway. He hasn't bought the house. That's not the issue. That's not the issue that triggers the statute of limitations. What triggers the statute of limitations is the deprivation of her house, which occurred when the foreclosure occurred in January of 2002. And that's outside the statute of limitations. See, the trial court got everything bollocked up here, and that's why it's wrong. That's why that statement is wrong. We have a number of discovery rules that don't get triggered until somebody can not only have been damaged, but has some way of reasonably figuring out who hurt them. Judge, by two years, two years prior to the filing of this complaint, she knew everything. She knew she had been injured. She had lost her house. The foreclosure proceedings had gone through, and that she had, the foreclosure had gone through, and she had been, she had lost possession of the house. She was there as a squatter at that point. She, all the so-called harassment had already occurred. All the so-called, the suicide attempt had occurred. All the so-called things that had happened, which she says forced her to lose her job. All those things had occurred outside the statute of limitations more than two years before. Now, assuming, assuming, and we don't concede this point, assuming that there is a discovery rule in 12.1101, which is a matter disputed here, even assuming that, that, that there was a discovery rule, all of the things that she complains about that Hallberg did that could have been either a deprivation under Section 1983, certainly intentional infliction of emotional distress. He didn't see her, he did all these things before February 25th, 2002, and certainly her allegation that he had interfered with her contract. The foreclosure occurred in January of 2002. That's when the lender took, retook possession. All those things occurred more than two years before. She knew at that point that she had been injured, for sure. This is not a case, a case of mistaken identity. You know, who's the defendant? That's what you usually find with these discovery cases, is, you know, who, who is the defendant? She knew who it was, and she knew that she had been tortiously injured, which I think is the, your question. Now, how would she, why is it the motive, why is the motive irrelevant here? I'll give you an example. Judge, if you're going down the street and I'm following you in a car and I ram into you, okay, it doesn't matter if I'm, my motive is to hurt you, or in some way I think I'm helping myself by ramming you. At that point, you know all the facts from which to discover that you've been injured, okay, that you have, who the defendant is, you know it's me, and you know it's, it's, it's a tort. Whether it's a negligent tort or because I rammed you, it's an intentional tort, it doesn't matter. My motive does not matter under the discovery rule. What matters is the, the facts that give rise so that you can discover that there's a tort. What if we had, what if you had an officer who was repeatedly issuing you citations, and at some point two years after your last citation, you figure out that the officer is being paid according to the number of tickets that he issues. Change anything? That might change something, and there's a case in the record upon that, which is the, the judge case, the Kimes case, where it was a conspiracy of some kind. But that, that was actionable as a conspiracy. What's actionable here is first, let me go through it again, there's three claims. It, would this, would Miss Turner have had a cause of action if she had sued your client right at the time that she was dispossessed of her home, but Mr. Hallberg had never purchased the home? Yes. Yes, she'd have to admit that. And she would have a successful cause of action? Well, she certainly would have a successful, I don't, I'm, I don't think she, I'm not conceding liability here. I know, but you lost a jury verdict here. I, okay. To answer your question, yes. You lost a jury verdict. Let's put it this way. Would she have a colorable claim that she could take to a jury? Sure. What about intentional infliction of emotional distress? Everything that Hallberg allegedly did to her occurred outside the statute of limitations. All he did was stand there in April of 2002 while there was a sale going on. Her, the gist of what she says for her intentional infliction of emotional distress claim is he harassed me to the point that I tried to commit suicide. Well, that occurred three years before. How would she know that this is intentional infliction of emotional distress until she can put together the pieces that says, the reason the guy was doing all of this to me, the reason he comes back here and inspects my property time after time after time is to force my home into foreclosure so he can purchase it at a fire sale and resell it. The reason is irrelevant. The intent that she has to discover, just again, using the intent, intentional infliction of emotional distress claim, the intent is the intent to injure. In January of February of 2002, she knows from observing him, you know, being in the driveway and coming around 20 times over two years and, you know, she can't get this guy out of his mind. She knows everything more than two years before from which she can determine that there's an according to her, she was injured outside the statute of limitations. So why he's doing it, whether he's doing it because of some, you know, some crazy motive or because he wants to take her house, that's not the relevant intent under the statute of limitations. The relevant intent is you have to go back to the tort. And again, just using the intentional infliction statute, the tort there is the intent to injure. And she knew that. She didn't have an epiphany when she got, in April of 2002, when she saw Hallberg there or when the city started doing an investigation later on. That doesn't add anything to the mix. Yeah. And the problem here, counsel, is, of course, that he's acting under color of law. If you write a citizen doing all of this, then she might have realized immediately what the problem was. And he did all the color. But he's acting entirely under color of law. And she doesn't have any reason to suspect his motivation. He did everything under color of law more than two years before. Everything that happened within the two years was not under color of law. Because he was acting as a private citizen when he was trying to purchase the house. I think even the city says that. So everything that happened under color of law, the badge, as you were, was more than two years before. Now, unless the court has any further questions on the discovery rule, we do not concede that it's a discovery rule in the statute of limitations. If you look at the case that counsel just gave you in the supplemental letter that he sent, and I don't have the site here, but he just sent it to you over the weekend, that shows considerable uncertainty in the Oregon courts whether the discovery rule, whether there is one. We say there isn't one. If you look at the way that Oregon construes statutes, then there isn't one. I mean, there's almost no question about that. If you read the text and context of 12.110, and you put the Oregon Supreme Court in your shoes today deciding this case, there's no discovery rule. Because they would analyze it under PEG versus Boley, and they'd say, which is their standard case for analyzing a statutory construction, and they would say there's no discovery rule. Well, if there's no discovery rule, she loses. Because then she cannot rely upon anything within the two years. So if your client had done this through a straw purchaser, and Turner learned more than two years afterwards that, in fact, he was the Wizard of Oz behind the curtain? Different case. Totally different case, Judge, and you've put your finger on it, why this is a different case than most of the cases that you see. Most of the cases that you see, there's confusion as to the identity of the defendant. In this case, there was never any confusion about the identity of the defendant. Okay. You want to save five minutes? I do, Your Honor. Okay. Thank you. Thank you for your argument. Thank you. We'll hear from the appellees at this time. Do you have an agreement on time? Yes. I'll take up to 10 minutes, probably less, and Mr. Auerbach has the rest of the time. Okay. You have Turner. He has the city? Yes. Okay. Go right ahead. My name is Charles Merton. I represent Dana Turner. Statute of limitations in Oregon is a discovery rule under Section 1983, under the Kimes decision. It's when you know the basis for your constitutional claim. The judge set aside a judgment, and four or three years later, the plaintiff figured out that there was a conspiracy. It was not setting aside of the judgment and the loss of any property interest in the judgment. It was discovery of the constitutional claim, which was the conspiracy. Here, throughout this trial, pre-trial, trial, post-trial, the mantra from the defendant has been, I was only doing my job. You put your finger on it. When the police officer holds the gun to your head and says, if you move one inch, you escaping felon, I'll kill you, is that tortious? You wouldn't find out that that is tortious just for those things. You would find out under state law that was tortious when she learned the purchase was made. Otherwise, up to that point, even if a case had been filed, what could you discover? You would discover only the position of the defendant and his cohorts within the bureau, which was, we're only doing our job. You could not discover the wrongdoing intent. Now, the intent is important here because of your decision, the Ninth Circuit's decision in the Squaw Valley case, where it said on a class of one, if you're enforcing an otherwise proper ordinance, but you're doing so out of greed or malice, that is arbitrary, and that gives the plaintiff a claim under the class of one theory. Under the torts here that were alleged, there's a privilege. This man is privileged, just like any police officer is, and no lawyer is going to take that kind of case without some sort of other kinds of evidence. It came when the city itself told her that this guy bought the house, and it was improper. Counsel, let's assume that you are correct as to the 1983 case. That is, she can't really figure out that there's been a deprivation of her rights until she knows that this guy, acting under color of law, not only did all these things that deprived her of her home, but did them because he was trying to purchase the property for himself. Now, what about the state tort claims? They're stronger in favor of the plaintiff because there's three things. You've got to know or should know that you've been injured. You've got to know or should know who caused the injury, and most importantly for this analysis, you have to know that it's tortious. You have to know or should know it's legally wrong. And the cases also say the fact that you have grounds to suspect or grounds to investigate doesn't start the statute of limitations. It's a jury question as to what it is you would have found out had you investigated, and was that sufficient then to give you information that was tortious? The Oregon Supreme Court is strong on not allowing people like predators here to get out from under the statute of limitations. You need three things. You have to know or should know that it's tortious, which is quite different, I think, than the normal statute of limitations for almost anything else. The record is, your argument is the record's clear that Ms. Turner didn't learn who had purchased her property until a date that's within the two-year statute. Oh, yeah. We sued four months afterwards. It's clear in the record. Unless you have other questions, I think that's it. Thank you. Judge Nelson? Just a second. No questions. Okay. We'll hear from the city at this time. Mr. Auerbach? May it please the Court? My name is Harry Auerbach, and I represent the City of Portland. What dooms Mr. Hallberg's indemnity claim is issues of preservation and standard of review. First of all, while affirming the judgment in favor of Ms. Turner makes it crystal clear that the district court did not err in finding that Hallberg's conduct constituted malfeasance in office. Even without that, the record was sufficient for the finding that the trial court made. The only issue that Hallberg has preserved as to his indemnity claim is his statement in the blue brief that he was entitled to indemnity because there was no malfeasance on defendant's part because he did not conduct his enforcement activities improperly. There's no argument in his brief about what constitutes malfeasance in office. There's no other argument made. So if there's any evidence that would support the trial court's finding that Mr. Hallberg did anything that was improper, we win. And the record clearly shows that. The record shows that there's evidence that he cited things that weren't violations. The evidence shows that he did so from a motivation to pressure a vulnerable homeowner to lose her house so that he could buy it for his own purposes. That's the essence of malfeasance, is abusing your public authority for private gain. That's precisely what the evidence permitted the trial court to find, that Mr. Hallberg didn't. And there's simply no basis for reversing that judgment. Suppose the case were that Hallberg was a more aggressive enforcer of code violations than other people who did the same kind of work. And that some of the properties he cited came up for foreclosure and they were, for some reason, put up for bid at a public auction and he shows up as a private citizen and successfully bids to buy the property. Would that be different? Well, Judge, the question in the case is what the evidence permitted the trial court to find. And it depends on what, in your hypothetical, the answer depends on whether there is evidence to find that he did that for the purpose of his own private gain. And in this case, that evidence was surely there. Whether this court would resolve that evidence in some other way isn't the issue. The issue merely is could the district court rationally have found from the evidence in front of it that Hallberg did something improper in his activities with regard to Ms. Turner's house. There's just no way to argue that that's not there. So I hope I've answered your question. I think so. Any questions, Judge Nelson? No questions. Okay. Thank you. Thank you for your argument. We'll hear a rebuttal argument at this time. Counsel? Thank you, Your Honors. Mr. Kinney, let's suppose that we were to agree with you as to discovery on, let's say, the state claim, but not as to the 1983 claims. What would we do in this case? You'd affirm on that claim. I mean, I don't know. What do we have to do? We have to send it back to the district court. We've already had a remittiture here. What has to go back? Do we have to go back and have a trial on damages? How do we separate all of that out? To be honest with you, Judge, I don't know. I haven't thought about that question, what you would do. You've already had the damages in this case reduced substantially. Correct. It looks like the judge has sort of come up with a unitary, sort of a unitary or a global settlement of the claims. What would happen other than you would reverse and send it back? You know, what would happen to that 1983 part of the verdict? I'd really want to have time to think about it and brief it, if that's what the court would support. Your claim is that the discovery rule is the same both for the federal claims and for the state claims. Well, actually, Judge, I think what I'm saying is that there is no discovery rule for the state claims, 12.110. There is, and to the extent there is a discovery rule. Well, we have to have a time as of which we measure the tort. So that seems to be an issue here. I believe the rule is that there is a discovery rule for the federal. But that, and it's arguable whether there's a discovery rule for the state. Have I, is that answer? And even if there is, it's not met. That's your argument. That's my argument. Certainly for the state claims, we would say there is no discovery rule. And just so that the court is apprised of exactly what the time frame is, I think what these dates are correct. She was foreclosed in January of 2002. She lost possession. In March 2002, she was evicted. In April 2002, Mr. Hallberg purchased the residence through a realtor. Now, on the date, she's evicted in March of 2002. Is that when she sees him standing down? Well, I believe that's the date. Okay, why isn't that the date from which we measure things which would make her claims timely? Because all she did was see, which part of it, the eviction or seeing him on the street? Well, when she sees him on the street, doesn't that trigger the idea that there's some connection between everything that he's done to her and his conduct? No. No, a reasonable person would not conclude simply because he's on the street. That's the only thing that happened afterwards other than the purchase. Everything, I don't want to regurgitate it, Judge, but everything that happened, really the pivotal date here is January 2002, where she loses the debt. Because after that, it's not her house anymore. She's deprived of her property interest. It's gone. So that's the pivotal date. And we've made that, I've already argued that in the first assignment of error, that Mr. Hallberg had no responsibility for that, even under a view of the case where you give the plaintiff the benefit of every beneficial inference. Have I answered your question, Your Honor?  OK. And then in March, February of 25, 2004 is the date of, we say, the statute of limitations, 25, 2004. They didn't file until a month later, in March of 2004. So that's why we say it's untimely. Just briefly on the indemnity issue, in the excerpt of record in his opinion and order on indemnity after a bench trial, Judge King relied almost entirely on the verdict. And therefore, if you reverse, we would say that part of his opinion falls away. There's nothing to support his determination. He does go on to say, alternatively. And his alternative bases are suspect, because either there's just a few of them, number one, and they don't rise to the level of malfeasance. I don't know what this argument is, that we haven't preserved the malfeasance. Malfeasance is malfeasance. Either it is or it isn't. There's not little bits of malfeasance and big pieces of malfeasance. There's malfeasance. And we would say, even on the alternative basis, there's no malfeasance. Because when you go to the next page of Judge King's opinion, one of the reasons that he relies upon what happened in other cases is he cites the Hayes case. Now, this court has affirmed almost an identical kind of situation where Mr. Hayes sued Mr. Hallberg, and it was thrown out on summary judgment. Same kinds of theories. They had more theories in that case. But that's gone from Judge King's opinion. So we would say, even on the alternative basis, it's clear error. And we'd ask you to reverse. Thank you for your time this morning. Thank you for your argument, counsel. Thank all sides for their arguments. The case just argued will be submitted for decision, and we'll proceed to the last case on the argument calendar this morning, North.
judges: Nelson, Hawkins, Bybee